FITZPATRICK *v.* LIQUOR CONTROL COMMISSION.

1. EQUITY—MOTION TO DISMISS—ALLEGATIONS OF FACT IN BILL OF COMPLAINT.

On a motion to dismiss a bill of complaint the well-pleaded allegations of fact therein must be taken as true.

2. INTOXICATING LIQUORS—LIQUOR CONTROL COMMISSION—STATUTES —CONSTITUTION.

The liquor control commission is vested by the Constitution with plenary power to control the alcoholic beverage traffic and may exercise such power subject to express statutory provisions or necessary implications limiting the exercise thereof that the legislature is empowered by the Constitution to enact (Const. 1908, art. 16, § 11, as ratified in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

3. SAME—LICENSING OF BARTENDERS—STATUTES—CONSTITUTIONAL LAW.

The licensing of bartenders, to act as such in places where alcoholic liquor is sold, does have a reasonable relation to the control of the alcoholic liquor traffic and the sale of intoxicating liquor for consumption on the premises, as bartenders are frequently in charge of such places, contact the liquor-consuming public, are allowed to sell alcoholic liquor by the glass and decide whether the prospective purchaser is a proper person who can lawfully make the purchase and consume the liquor on the premises, hence supervision over them is within the purview of the legislative powers conferred by the Constitution (Const. 1908, art. 16, § 11, as ratified in 1932; Act No. 8, § 19a, Pub. Acts 1933 [Ex. Sess.], as added by Act No. 133, Pub. Acts 1945).

4. SAME—BARTENDERS—CONSTITUTIONAL LAW.

No one has any property right in an employment to mix and pour alcoholic drinks behind the bar of a place where they are sold and consumed, decide who may buy and consume liquor and sell it by the glass for consumption on the premises, en-

tirely outside of and beyond the control of the law, hence the imposition of a restriction barring all women except the wives or daughters of male licensees from acting as bartenders did not constitute a denial of equal protection or due process of law (U. S. Const. am. 14, § 1; Mich. Const. art. 2, §§ 1, 16; Act No. 8, § 19a, Pub. Acts 1933 [Ex. Sess.], as added by Act No. 133, Pub. Acts 1945).

5. SAME—CONSTITUTIONAL LAW—DUE PROCESS—EQUAL PROTECTION.
The control of the sale, use, transportation and consumption of intoxicating liquor is so peculiarly within the province of legislative powers that the regulation, or even prohibition thereof, in many instances, does not deprive an individual of property without due process of law, or deny him equal protection of the laws (U. S. Const. am. 14, § 1; Mich. Const. 1908, art. 2, §§ 1, 16; art. 16, § 11, as ratified in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

6. SAME—POLICE POWER—LICENSES—PROPERTY RIGHTS.
In this State a license to engage in traffic in alcoholic liquor is not a contract in the sense that the licensee has thereby acquired any vested or property rights but is in the nature of a permit and the traffic is at all times subject to the control of the State in the exercise of its police power (Const. 1908, art. 16, § 11, as ratified in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

7. CONSTITUTIONAL LAW—EQUAL PROTECTION.
Not all discrimination, or so-called class legislation, is unconstitutional as classification that is not arbitrary and unreasonable is not reviewable and if any state of facts reasonably can be conceived that would sustain a statutory classification, its existence must be assumed (U. S. Const. am. 14, § 1; Mich. Const. 1908, art. 2, § 1).

8. SAME—ARBITRARY CLASSIFICATION—BURDEN OF PROOF—EVIDENCE.
One who assails a classification in a statute as arbitrary or unreasonable must carry the burden of showing such by a resort to common knowledge, judicial notice, or other legitimate proof.

9. SAME—PRESUMPTIONS.
All presumptions are in favor of the constitutionality of legislation and before it may be declared unconstitutional, it is necessary to point out the limitation upon the power of the legislature which the legislation in question transcends.

10. SAME—CLASS LEGISLATION.

Legislation is not unconstitutional because it is legislation of a particular kind and character or because it benefits a particular class if the object and purpose is legitimate and within the terms of the Constitution and the law operates equally upon those within the particular class (U. S. Const. am. 14).

11. SAME—COURTS—REVIEW OF LEGISLATION.

Courts cannot review legislative discretion and declare a given classification arbitrary simply because they differ with the legislature as to the propriety of the classification and the sufficiency of the reasons upon which it is based; for the law-making power is vested in the legislature and it must not be lightly assumed that legislators are less wise, or less mindful of the mandates of the Constitution, than are judges.

12. INTOXICATING LIQUORS—SALES—REGULATION—POLICE POWER.

The regulation of the business of selling alcoholic beverages is governed by legal principles different from those which apply to inherently lawful avocations, hence the governing authority may, in the exercise of the police power for the protection of the public morals, health and safety, grant the privilege of selling such beverages upon such terms and conditions as it may determine (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

13. STATUTES—PENAL STATUTES—CONSTRUCTION.

It is not necessary for a penal statute to cover the entire legally permissible field in order to be valid.

14. INTOXICATING LIQUORS—REGULATION OF TRAFFIC.

The right to regulate or prohibit traffic in intoxicating liquor is based on the police power of the State and the restrictions and conditions which may be imposed upon such traffic are entirely within the discretion of the people, acting through the legislature (Const. 1908, art. 16, § 11, as ratified in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

15. SAME—NATURE OF RIGHT TO SELL LIQUOR.

To sell intoxicating liquor at retail is not a natural right to pursue an ordinary calling (Const. 1908, art. 16, § 11, as ratified in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

16. CONSTITUTIONAL LAW—PROHIBITIONS—CONDITIONS.

If the governing power can prohibit a thing altogether, it can impose such conditions upon its existence as it pleases.

17. SAME—REGULATION OF EMPLOYMENTS—PUBLIC WELFARE.

    The State has a right to determine what employments shall be permitted, and to forbid those which are deemed prejudicial to the public good.

18. INTOXICATING LIQUORS—PUBLIC WELFARE—REGULATION.

    Intoxicating liquor, in its nature, is dangerous to the morals, good order, health and safety of the people, and is not to be placed on the same footing with ordinary commodities of life, such as corn, wheat, cotton and others, and restraints and limitations upon the liquor traffic may be upheld which might not be sustained as to callings that may be pursued as of common right.

19. STATUTES—CONSTRUCTION—COURTS.

    Courts may extend a statute to new conditions as they arise and may adjust constitutional and statutory provisions to fit changing social concepts but they may not remake or distort the statute so as to change its meaning.

20. INTOXICATING LIQUORS—WOMEN AS BARTENDERS—STATUTES.

    Provision of liquor act prohibiting women, except wives or daughters of male licensees, from acting as bartenders was not an unconstitutional discrimination against women thereby barred from such occupation (U. S. Const. am. 14, § 1; Mich. Const. art. 2, §§ 1, 16; Act No. 8, § 19a, Pub. Acts 1933 [Ex. Sess.], as added by Act No. 133, Pub. Acts 1945).

21. COSTS—PUBLIC QUESTION—INJUNCTION—ENFORCEMENT OF LIQUOR ACT.

    No costs are allowed in suit to enjoin enforcement of a provision of the liquor control act where question for determination was a public one (Const. 1908, art. 16, § 11, as ratified in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

Appeal from Wayne; Brennan (John V.), J. Submitted October 8, 1946. (Docket No. 10, Calendar No. 43,394.) Decided December 2, 1946. Rehearing denied January 6, 1947.

Bill by Donna Fitzpatrick and another against the Liquor Control Commission of the State of Michigan to enjoin the enforcement of Act No. 8, § 19a, Pub. Acts 1933 (Ex. Sess.), as added by Act No. 133, Pub. Acts 1945, liquor control act. Bill dismissed. Plaintiffs appeal. Affirmed.

*Ralph S. Moore* and *Gerald F. Fitzgerald,* for plaintiffs.

*Foss O. Eldred,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara, Charles M. A. Martin* and *Ben H. Cole,* Assistants Attorney General, for defendant.

· *Fitzgerald, Walker, Conley & Hopping, amicus curiæ.*

Boyles, J.   Plaintiffs are female bartenders in Detroit who filed the instant bill of complaint to enjoin the liquor control commission from attempting to enforce section 19a of the liquor control act * as added by Act No. 133, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 9209–34a. Stat. Ann. 1946 Cum. Supp. § 18.990 [1]).   The case was heard by Judge John V. Brennan on a motion to dismiss which was filed by the defendant commission, and which motion was granted.   From the order dismissing their bill of complaint plaintiffs appeal.   The motion to dismiss was based on the following grounds:

"1.   That the bill of complaint fails to state a cause of action entitling plaintiffs to any relief;

"2.   That the regulation and control of liquor traffic is within the police power of the State, and neither the plaintiffs herein nor any other persons have acquired any vested rights, nor may such persons acquire any vested rights in any regulation or privilege granted by the State;

"3.   That the regulation complained of, to-wit, Act No. 8, § 19a, Pub. Acts 1933 (Ex. Sess.), as added by Act No. 133, Pub. Acts 1945 is a valid exercise of the legislative power of the State under the Constitution of the State."

---

* Act No. 8, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1940, § 9209–16 *et seq.,* Stat. Ann. § 18.971 *et seq.*).

Section 19a of the liquor control act, added by Act No. 133, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 9209–34a, Stat. Ann. 1946 Cum. Supp. § 18.990 [1]), provides that no person shall act as bartender in any establishment in cities of 50,000 population or over which is licensed to sell alcoholic liquor for consumption on the premises, unless such person is licensed by the commission. It further provides that each applicant for a bartender's license shall be a *male* person 21 years of age or older, with certain exceptions. Shortly after the amendment went into effect plaintiffs filed this bill of complaint, in which they allege that they have been bartenders for many years, challenge the constitutionality of said section 19a, and seek an injunction to prevent its enforcement.

There is no dispute as to the facts. Under the circumstances well-pleaded allegations of fact in the bill of complaint must be taken as true. Plaintiffs are experienced female bartenders, over 21 years of age, who do not come within the exceptions allowed by the amendment. The material part of the amendment is as follows:

"No person shall act as bartender in any establishment licensed under this act to sell alcoholic liquor for consumption on the premises in any city now or hereafter having a population of 50,000 or more, unless such person shall be licensed by the commission under the provisions of this section: *Provided,* That the commission may adopt rules and regulations governing the licensing of bartenders in other political subdivisions of the State. Such licenses shall expire on the thirtieth day of April following the issuance thereof. An annual license fee of $2.00 shall be paid by each applicant, which shall be credited to the general fund of the State. *Each applicant for license shall be a male person 21 years of age or over,* shall submit a certificate

from his local board of health or health officer showing that such person is not affected with any infectious or communicable disease, and shall meet the requirements of the commission: *Provided,* That the wife or daughter of the male owner of any establishment licensed to sell alcoholic liquor for consumption on the premises may be licensed as a bartender by the commission under such rules and regulations as the commission may establish. * * * For the purpose of this act a bartender shall be construed to mean a person who mixes or pours alcoholic liquor behind a bar." Act No. 8, § 19a, Pub. Acts 1933 (Ex. Sess.), as added by Act No. 133, Pub. Acts 1945.

It is plain that the foregoing section 19a limits the licensing of female bartenders to the wife and daughters of the male owner of a licensed liquor establishment. By it plaintiffs are excluded from obtaining bartenders' licenses. They claim that this section is unconstitutional, that it bears no reasonable relation to the object of the legislation, that it is discriminatory as to them, class legislation, therefore, void.

Michigan Constitution (1908), art. 16, § 11, as ratified at the November election in 1932, provides as follows:

"The legislature may by law establish a liquor control commission, who, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this State, including the retail sales thereof; and the legislature may also provide for an excise tax on such sales: Providing, however, that neither the legislature nor such commission may authorize the manufacture or sale of alcoholic beverages in any county in which the electors thereof, by a majority vote, shall prohibit the same."

Pursuant to this authority the legislature enacted Act No. 8, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1935, §§ 9209–16—9209–72, Stat. Ann. §§ 18.971–18.1028), creating the liquor control commission. Section 1 of the act (Comp. Laws Supp. 1940, § 9209–16, Stat. Ann. § 18.971) provides in part:

"Except as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the State of Michigan, including the manufacture, importation, possession, transportation and sale thereof."

In considering the powers of the liquor control commission under the Constitution, the Court has said:

"Except as limited or defined by statute, the Constitution itself vests the statutory commission with plenary power to control alcoholic beverage traffic in this State. This appears from the constitutional provision hereinbefore quoted. And such is our holding in *Scott* v. *Township Board of Arcada Township,* 268 Mich. 170; *Noey* v. *City of Saginaw,* 271 Mich. 595.  * * *
"The constitutional provision that the commission 'shall exercise complete control of all alcoholic beverage traffic within this State, including the retail sales thereof,' is limited only by express provisions or necessary implications embodied in the legislative act (as amended) by which the commission was created and its powers, duties and limitations prescribed." *Terre Haute Brewing Co., Inc.,* v. *Liquor Control Commission,* 291 Mich. 73, 78, 79.

Section 19a gives the liquor control commission the authority to license bartenders in establishments which are licensed to sell alcoholic liquor for con-

sumption on the premises, and excludes from acting as such bartenders all persons who have not been so licensed by the commission. Plaintiffs claim (and it must be admitted) that in so doing the legislature has discriminated between male and female licensees, as to who may act as bartenders. The first ground on which plaintiffs claim that such discrimination is unconstitutional is that it has no reasonable relation to the object of the legislation, although the object is stated in the title of the act to be, in part, "to provide for the control of the alcoholic liquor traffic within the State of Michigan." We are not in accord with this claim. The licensing of bartenders, to act as such in places where alcoholic liquor is sold, does have a reasonable relation to the control of the alcoholic liquor traffic and the sale of intoxicating liquor for consumption on the premises. Bartenders are frequently in charge of such places, contact the liquor-consuming public, are allowed to sell alcoholic liquor by the glass, and generally must decide whether the prospective purchaser is a minor or otherwise a proper person who can lawfully make the purchase and consume the liquor on the premises. Supervision over the activities of bartenders must be considered as essential to a proper control of alcoholic liquor traffic. Such supervision is within the purview of legislative powers conferred by the amendment and has a reasonable relation to the object of the legislation. See *Benson* v. *State Hospital Commission, ante,* 66, and cases therein referred to.

Plaintiffs further challenge the constitutionality of section 19a on the grounds (1) that it deprives plaintiffs of the right to continue their occupation as bartenders, *i. e.,* deprives them of rights without due process of law, and (2) that it is discriminatory,

therefore void, as class legislation. These claims are based, in part, on article 2, §§ 1 and 16, of the Michigan Constitution (1908), and amendment 14, § 1, of the United States Constitution, which are commonly referred to as the due process and equal protection provisions of the State and Federal Constitutions. The essence of plaintiffs' claim in that regard is that they are deprived of equal protection of the law, and that the amendment by section 19a is unconstitutional class legislation.

Plaintiffs have not been deprived of any property rights. In this State no one has any property right in an employment so directly associated with traffic in alcoholic liquor that they may mix and pour alcoholic drinks behind the bar of a place where they are sold and consumed, decide who may buy and consume the liquor, sell it by the glass for consumption on the premises, entirely outside of and beyond the control of the law. The control of the sale, use, transportation and consumption of intoxicating liquor is peculiarly within the province of legislative powers, and the regulation, or even prohibition thereof, in many instances, does not deprive an individual of property without due process of law, or deny him equal protection of the laws. *Whitney* v. *Grand Rapids Township Board,* 71 Mich. 234; *Sherlock* v. *Stuart,* 96 Mich. 193 (21 L. R. A. 580); *Quay* v. *Cheboygan Circuit Judge,* 150 Mich. 457; *People* v. *Eberle,* 167 Mich. 477 (affirmed 232 U. S. 700 [34 Sup. Ct. 464, 58 L. Ed. 803]); *People* v. *Wheeler,* 185 Mich. 164; *Indianapolis Brewing Co.* v. *Liquor Control Commission* (*Mich.*), 305 U. S. 391 (59 Sup. Ct. 254, 83 L. Ed. 243).

A license to engage in traffic in alcoholic liquor is not a contract in the sense that the licensee has thereby acquired any vested or property rights. It

is in the nature of a permit and the traffic is at all times subject to the control of the State in the exercise of its police power. *People* v. *Schafran,* 168 Mich. 324; *Case* v. *Liquor Control Commission,* 314 Mich. 632, 643.

Plaintiffs further contend that section 19a is class legislation in that it discriminates (1) between the wives or daughters of male licensees and the daughters of female licensees, or other women, and (2) between women employed as bartenders and women employed in other capacities in licensed retail liquor establishments. Obviously section 19a does not apply to all women alike, nor to all persons alike, except perhaps in the requirement that *no person* shall act as bartender in any establishment licensed by the commission to sell alcoholic liquor for consumption on the premises (in cities of 50,000 population or more) without a license by the commission. It does require every licensed bartender to be 21 years of age or over, requires every applicant for a license to submit a certificate showing that such person is not affected with any infectious or communicable disease, and every applicant must meet the requirements of the commission. Plaintiffs claim that discrimination appears in the fact that only the wife or daughters of the male owner of a licensed establishment may be licensed as female bartenders. It is true that under section 19a no female may be licensed to tend bar in a retail liquor establishment except the wife or daughter of the male owner of the licensed establishment, and who otherwise meets the requirements of the act and the rules and regulations of the commission. In a sense, this may be called class legislation, inasmuch as it excludes all other women from being licensed as bartenders. However, all discrimination, or so-

called class legislation, is not unconstitutional. *1426 Woodward Avenue Corp.* v. *Wolff,* 312 Mich. 352, 374.

"The fundamental rule of classification for the purpose of legislation is that it shall not be arbitrary; and it is not reviewable unless palpably arbitrary and unreasonable. *Haynes* v. *Lapeer Circuit Judge,* 201 Mich. 138 (L. R. A. 1918 D, 233); *Straus* v. *Elless Co.,* 245 Mich. 558. * * * In *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389, 418 (34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915 C, 1189), it is said:

" 'A legislative classification may rest on narrow distinctions. Legislation is addressed to evils as they may appear, and even degrees of evil may determine its exercise.'

"If any state of facts reasonably can be conceived that would sustain statutory classification, its existence must be assumed. *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179).

"In *Borden's Farm Products Co., Inc.,* v. *Baldwin,* 293 U. S. 194, 209 (55 Sup. Ct. 187, 79 L. Ed. 281), it is said:

" 'When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61 (31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912 C, 160); *Ohio, ex rel. Clarke,* v. *Deckebach,* 274 U. S. 392, 397 (47 Sup. Ct. 630, 71 L. Ed. 1115); *Lawrence* v. *State Tax Commission of Mississippi,* 286 U. S. 276, 283 (52 Sup. Ct. 556, 76 L. Ed. 1102, 87 A. L. R. 374).'

" 'It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed.   *   *   *   It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength.   It is not within the competency of the courts to arbitrate in such contrariety.'   *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, 357 (36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917 A, 421, Ann. Cas. 1917 B, 455)."   *Baker* v. *State Land Office Board,* 294 Mich. 587, 602–605.

"Act No. 507, Local Acts 1907, giving the village council of Tower authority to accept liquor dealers' bonds with a surety company as surety, but not requiring them to do so, leaving it to their discretion to either accept or reject such bonds, is not unconstitutional in that it empowers the council to discriminate between dealers by rejecting the bonds of some and accepting others."   *Quay* v. *Cheboygan Circuit Judge* (syllabus), 150 Mich. 457.

"A classification is sufficient if it is practical and reasonable, and is not reviewable unless palpably arbitrary and unreasonable."   *Tribbett* v. *Village of Marcellus,* 294 Mich. 607, 612.

"In *Tribbett* v. *Village of Marcellus,* 294 Mich. 607, 615, we quoted the following from *Borden's Farm Products Co., Inc.,* v. *Baldwin,* 293 U. S. 194, 209 (55 Sup. Ct. 187, 79 L. Ed. 281) :

" 'When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or

to other legitimate proof, that the action is arbitrary.'

"We said *In re Brewster Street Housing Site,* 291 Mich. 313, 335, 339:

" 'All presumptions are in favor of the constitutionality of the legislation and before it may be declared unconstitutional, it is necessary to point out the limitation upon the power of the legislature which the legislation in question transcends.  *  *  * Legislation is not unconstitutional because it is legislation of a particular kind and character, or because it benefits a particular class. If the object and purpose of the legislation is legitimate and within the terms of the Constitution, the mere fact that there is a classification, so long as the law operates equally upon those within the particular class, does not render it unconstitutional.'

"We also said in *Tribbett* v. *Village of Marcellus, supra,* p. 617:

" 'Courts, however, cannot review legislative discretion and declare a given classification arbitrary simply because they differ with the legislature as to the propriety of the classification and the sufficiency of the reasons upon which it is based; for the law-making power is vested in the legislature. It must not be lightly assumed that legislators are less wise, or less mindful of the mandates of the Constitution, than judges are. Therefore, it is only in cases where it is manifest upon the face of a statute that a classification therein is based upon no reason, but is purely an arbitrary act, that courts may and must, for that reason, declare unconstitutional.' " *In re Phillips,* 305 Mich. 636, 641, 642.

The legislature has seen fit to impose restraints and limitations upon the liquor traffic more drastic than might appear to be necessary if applied to traffic in such ordinary commodities as corn, wheat, shoes, groceries, and similar articles of commerce and trade. The danger inherent in the excessive

use of intoxicating liquor and its effect on health, morals and public safety is recognized by many laws seeking to regulate and control its use, for example, drunk driving, intoxication in public places, sale of intoxicating liquor to minors. In 1909 the legislature, in creating a department of labor, declared:

"No person shall employ or permit any girl or woman to act as barkeeper, or to serve liquor, or to furnish music, or for dancing in any saloon or barroom where spirituous or intoxicating liquors, or malt, brewed or fermented liquors are sold or kept for sale." Act No. 285, § 25, Pub. Acts 1909 (2 Comp. Laws 1929, § 8340).*

Further back in the course of such legislation the legislature declared that the wife and bona fide female members of the family of a saloonkeeper might tend bar in his saloon, notwithstanding even more drastic restrictions were then imposed against the employment of women in saloons than at the present day. Act No. 170, §§ 1–3, Pub. Acts 1897 (2 Comp. Laws 1897, §§ 5361–5363),** provided:

"No person shall employ any girl or woman as barkeeper, or to serve liquors, or to furnish music, or for dancing in any saloon, or barroom where spirituous or intoxicating liquors, or malt, brewed or fermented liquors are sold or kept for sale.

"No girl or woman shall be employed to tend bar, serve liquors, to dance or furnish music in any saloon or barroom where spirituous or intoxicating liquors, or malt, brewed or fermented liquors are sold or kept for sale.

"No keeper or proprietor of a saloon where spirituous or intoxicating liquors or malt, brewed or fermented liquors are sold or kept for sale shall permit

---

* Repealed by Act No. 8, § 52, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1940, § 9209–67, Stat. Ann. § 18.1023).

** Repealed by Act No. 240, Pub. Acts 1915 (1 Comp. Laws 1929, § 120 [Stat. Ann. § 2.321]).

any girl or woman to tend bar, serve liquors, dance or furnish music for hire in his saloon or barroom: *Provided,* That this act shall not be so construed as to prevent the wife or other females who are *bona fide* members of the family of a proprietor of a saloon from tending bar or serving liquors in his saloon."

In *People* v. *Case,* 153 Mich. 98 (18 L. R. A. [N. S.] 657), where the question arose as to the constitutionality of the following provision in an ordinance:

"Sec. 5. No person licensed under this ordinance shall harbor or employ any females in or about his or her place of business, or permit females to resort to his or her place of business for the purpose of drinking,"

the Court said (p. 99):

"The question is whether the ordinance, and particularly section 5, under which respondent was convicted, is in contravention of the Constitution and laws of the State of Michigan.

"The theory of counsel for respondent, and upon which the principal contention seems to be based, is that the ordinance in question is an unwarranted discrimination against the rights of females, that women are granted equal rights, privileges and immunities by the Constitution; and that the ordinance in question is an infringement on these constitutional rights, and therefore void."

The Court rejected this theory and upheld the validity of the ordinance.

Plaintiffs challenge the constitutionality of section 19a mainly on the ground that it discriminates between different classes of women, as well as between men and women. In *City of Hoboken* v. *Goodman,* 68 N. J. Law, 217 (51 Atl. 1092), the Court had under consideration an ordinance which forbade the employment of any female in any public place

where intoxicating liquors were sold, but provided that "nothing therein 'shall be so construed as to prevent the wife of any person having such a license from selling or distributing the aforesaid liquors.'"

It was argued, among other things, that the ordinance denied to those employed the equal protection of the laws, because "(1) it prohibits a citizen conducting a lawful business from engaging the services of females; (2) it prohibits females from engaging in a lawful employment, and (3) it makes an unjust and unreasonable discrimination between females."

The Court said (p. 221):

"The objection is that of discrimination. It is pointed out that the wife of a licensee may be employed in the place where the employment of other women is forbidden, and that women are not debarred from proprietorship under license. That classes of women are privileged works no injury to others; but apart from that, it seems to me that there is just ground for the discrimination of this ordinance. The supposed evil aimed at is the employment of women in connection with a traffic likely to induce vice and immorality. The wife of the proprietor of a place of public entertainment is not in any fair sense an employee, and her presence may fairly be deemed to be deterrent of impropriety. The policy of licensing women as proprietors is questionable, but such licensees are not within the mischief which the ordinance seeks to remedy. We cannot say that the exceptions ought to nullify a regulation that we must concede is a wise one, namely, the debarring of women from forming part of the allurements of drinking places."

A case quite in point with the case at bar is *People v. Jemnez*, 49 Cal. App. (2d) 739 (121 Pac. [2d] 543), decided by the appellate department of the

superior court, Los Angeles county, California, in 1942. The pertinent portion of the alcoholic beverage control ordinance under consideration provided:

"Every person who uses the services of a female in mixing alcoholic beverages  *  *  *  on any premises used for the sale of alcoholic beverages for consumption on the premises, or any female who renders such services on such premises, is guilty of a misdemeanor.  *  *  *

"The provisions of this section shall not apply to the mixing of alcoholic beverages  *  *  *  by any on-sale licensee nor to the mixing of such beverages by the wife of any licensee on the premises for which her husband holds an on-sale license."

The constitutionality of the above provision was attacked on the ground, among others, that it abridged the privileges of citizens, denied equal protection of the laws, and that it was unreasonable and arbitrary. The opinion so clearly applies to the situation now before us that we quote from it with approval, as follows (pp. 741–743):

"It has long been uniformly held that there is no inherent right in a citizen to engage in the business of selling alcoholic beverages.  *  *  *  'The regulation of that business is governed by legal principles different from those which apply to what may be termed inherently lawful avocations.'  *  *  *  The governing authority may, therefore, in the exercise of the police power for the protection of the public morals, health and safety, grant the privilege of selling alcoholic beverages upon such terms and conditions as it may determine.  *  *  *  The ordinance under attack in this case and which was sustained by the court provided, among other things, that no license should be granted to sell intoxicating liquors in any place where women were employed to wait on the patrons.  *  *  *

"The argument that the section forbidding women employees to mix drinks abridges the privileges and immunities of citizens and denies equal protection of the laws to those whose employment is prohibited, overlooks two fundamental propositions: (1) that the business here involved is one of privilege and not of right; and (2) that the classification of women with respect to mixing drinks is reasonable.   *   *   *

"Furthermore, a particular class of women has no constitutional right to be employed in a particular business when the effect of such employment would be detrimental to society.  The section of the alcoholic beverage control act under consideration divides women into three different classes with respect to the privilege of mixing drinks in a place having an on-sale license, and gives the privilege to two of these groups while denying it to the third. It seems to us that there is a fair and substantial basis for the classification.  As to the group of women who are licensees, the board of equalization has direct supervision over them with the power to revoke or suspend their licenses, so it is not reasonable to assume that such a licensee is going to do anything improper and thus lose her license and business.  As to the wife of a licensee, she is more nearly in the position of a licensee than in that of an employee and her presence may fairly be considered to be a restraint upon impropriety.  A mere employee would not have the same incentive to prevent improprieties that either a licensee or the wife of a licensee would naturally have.  Furthermore, the legislature may well have concluded that it would be an unwholesome influence upon the women themselves, the general public, and upon our young people, to permit women generally to act as bartenders.   *   *   *

"The final argument that the section is invalid on the ground that it is unreasonable and arbitrary to impose a penalty upon the 'mixing' only of alcoholic beverages is without merit.  The fact that the section

might have gone further and prohibited women employees from serving as well as mixing drinks does not render it invalid. It is not necessary for a penal statute to cover the entire legally permissible field in order to be valid.''

It was early settled in this State that the right to regulate or prohibit traffic in intoxicating liquor is based on the police power of the State and that restrictions and conditions which may be imposed upon the liquor traffic are entirely within the discretion of the people, acting through the legislature. In so holding, the Court said:

''The principle upon which is based the regulation of the liquor traffic is found in the police power of the State. No one possesses a natural, inalienable, or constitutional right to keep a saloon for the sale of intoxicating liquors. 'To sell intoxicating liquor at retail is not a natural right to pursue an ordinary calling.' Black, Intoxicating Liquors, §§ 46, 48. By the Constitution of 1850 such sales were absolutely prohibited. By the amendment of 1876 the prohibitory clause was removed from the Constitution, and the power vested in the legislature to deal with the traffic as it deemed expedient and wise.   *   *   * The restrictions and conditions upon it are entirely within the discretion of the people, through the legislature.

'' 'It is not for the courts to determine its expediency, or, as said by Mr. Cooley in his work on Constitutional Limitations, ''to run a race of right, reason, and expediency with the legislative branch of the State government.'' ' *Robison* v. *Haug,* 71 Mich. 38, 42; Cooley, Constitutional Limitations, 597.

'' 'If the governing power can prohibit a thing altogether, it can impose such conditions upon its existence as it pleases.' *Ex parte Christensen,* 85 Cal. 208 (24 Pac. 747); *Crowley* v. *Christensen,* 137 U. S. 86 (11 Sup. Ct. 13, 34 L. Ed. 620).   *   *   *

''Mr. Cooley says:

" 'The State has also a right to determine what employments shall be permitted, and to forbid those which are deemed prejudicial to the public good. * * * The general rule, undoubtedly, is that any person is at liberty to pursue any lawful calling, and to do so in his own way, not encroaching upon the rights of others. This general right cannot be taken away. It is not competent, therefore, to forbid any person, or class of persons, whether citizens or resident aliens, offering their services in lawful business, or to subject others to penalties for employing them. But here, as elsewhere, it is proper to recognize distinctions that exist in the nature of things, and under some circumstances to inhibit employments to some one class, while leaving them open to others. Some employments, for example, may be admissible for males, and improper for females; and regulations recognizing the impropriety, and forbidding women engaging in them, would be open to no reasonable objection.' " *Sherlock* v. *Stuart,* 96 Mich. 193, 196–199 (21 L. R. A. 580).

"In determining the constitutionality of an enactment, the court must remember that intoxicating liquor, in its nature, is dangerous to the morals, good order, health, and safety of the people, and is not to be placed on the same footing with the ordinary commodities of life, such as corn, wheat, cotton, tobacco, potatoes, et cetera. Restraints and limitations upon the liquor traffic may be upheld which might not be sustained as to callings that may be pursued as of common right." 30 Am. Jur. p. 278.

In enacting section 19a, *supra,* we must assume that the legislature concluded that women generally should not be allowed to act as bartenders in places where alcoholic liquor was sold for consumption on the premises. It is reasonable to assume that the legislature concluded that the male owner of a licensed liquor establishment would have such a measure of control over his immediate family that suf-

ficient safeguards would be imposed by him, to the
extent that his wife or daughter might properly be
allowed to mix and pour drinks behind the bar in
his establishment, and serve them to his customers,
while other women should be excluded from such
employment. The male owner, responsible for the
support of his wife and family, would naturally
have a financial interest in obtaining the help of his
wife or daughters in the conduct of his business.
The legislature may even have considered that pre-
venting women (except members of the owner's
family) from acting as bartenders in places where
intoxicating liquor is sold for consumption, would
be conducive of good morals—either those of women
themselves or the morals of the customers in such
places. It could be that chivalry toward women
might still exist in legislative minds indicating a
concern for the protection of women.

We need not speculate further on the reasons
which might have prompted the legislature to enact
section 19a in the form here presented for considera-
tion. We agree with what was said in *Nelson* v.
*State, ex rel. Gross,* 157 Fla. 412 (26 South. [2d]
60), decided May 7, 1946, as follows:

"The first question presented is whether or not
the city of Miami had power to enact a law prohibit-
ing the employment of women as barmaids to serve
liquor by the drink over the bar. *  *  *

"On constitutional grounds, appellee contends
that the regulation drawn in question is void be-
cause it has no reasonable relation to the public
health, peace, safety, morals, or welfare.

"It is settled law that a police regulation must be
reasonable and bear some substantial relation to the
public health, peace, safety, morals, or welfare. The
courts of this country have repeatedly upheld police
regulations forbidding the labor or presence of
women in saloons or limiting the hours of work for
women in liquor establishments. *  *  *

"It may be said that the position here taken is out of rapprochement with modern liquor trends, and it may be said that, in upholding the provision of the city code drawn in question, we are clinging to a dogma that is outmoded; that we should refurbish our thinking and clothe it in present day concepts. The answer to these charges is that they should be addressed to the legislature. Courts may extend a statute to new conditions as they arise, they may adjust constitutional and statutory provisions to fit changing social concepts, but, in doing this, they are not permitted to remake or distort the statute so as to change its meaning. The legislature and not the courts must, therefore, determine whether or not and to what extent females shall be permitted to dispense grog across the bar. The voice of the legislature and not the voice of the public is the legal barometer by which the court must determine liquor trends."

We need only to repeat what has been often said in decisions of this Court, that the wisdom of legislation is not for the court. The extent to which the legislature may be influenced by a newer conception claimed by counsel for appellants here, as to the rights of women in employment and in social life, and particularly to act as bartenders in licensed liquor establishments, is for the legislature, and it only, to decide. The regulation and control of traffic in alcoholic liquor, particularly with reference to who may act as bartenders, is within the police power of the legislature. Section 19a, *supra,* is not unconstitutional on the grounds asserted by appellants. The decree dismissing the bill of complaint is affirmed, but without costs, a public question being involved.

BUTZEL, C. J.; and CARR, BUSHNELL, SHARPE, REID, and NORTH, JJ., concurred. DETHMERS, J., did not sit.